# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG ZEMBA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 17-986 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| NVR, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Defendants' Motions to Dismiss (Docs. 17 & 20) will be granted in part and denied in part, as follows.

Plaintiffs have brought this diversity action, seeking recovery in connection with Defendant NVR's construction of their new, custom home. *See generally* Am. Compl. (Doc. 12) (hereinafter, "the Complaint"). Plaintiffs have identified a litany of grievances, and they seek recovery under the construction/sale agreement and their limited home warranty. *See id.* Among their various difficulties, a number of Plaintiffs' windows have leaked, and they have joined the window manufacturer, Ply Gem, as a second Defendant.[1] The parties are well-acquainted with the circumstances surrounding, and allegations in, the Complaint. Rather than recount them, the Court will proceed directly to its analyses.

Defendant NVR's arguments based on the contractual one-year statute of limitations are denied, to this extent. Although the contract purports to waive the "discovery rule,"

---

[1] In a footnote, Ply Gem's counsel indicates that the proper party-in-interest is MW Manufacturers, Inc., which is an indirect and wholly owned subsidiary of Ply Gem. *See* Doc. 21 at 2 n.2. Defendant has chosen to focus its energies on other matters, and so too will the Court.

it is silent regarding another well-established equitable doctrine in Pennsylvania, the "repair doctrine." Amodeo v. Ryan Homes, Inc., 595 A.2d 1232, 1235-39 (Pa. Super. 1991); *accord* N. Amer. Commcns,, Inc. v. InfoPrint Solutions Co., 817 F. Supp.2d 623, 633 & n.4 (W.D. Pa. 2011) (the repair doctrine, as applied in Pennsylvania, "is a common-law equitable estoppel of the statute of limitations for breach of warranty where the seller attempts to make repairs and represents that such repairs will cure the defect") (citation omitted). Tolling will attach where repairs were attempted; representations were made that the repairs would cure the defect(s); and the plaintiff relied on such representations. Amodeo at 1237.

Accepting as true the factual allegations in the Complaint, and reading all reasonable inferences in Plaintiffs' favor, at least some of their grievances plausibly may satisfy the repair-doctrine requirements. *See generally* Am. Compl. (discussing in detail Plaintiffs' numerous, ongoing communications with Defendants regarding deficiencies, efforts at repair and assurances that certain problems had been/would be fixed). In fact, the circumstances alleged practically beg its recognition:

> [T]he adoption of this theory of estoppel is correct as a matter of public policy[,] in that a party who in good faith postpones filing suit in reliance upon the other party's assurances that repairs will be effective and litigation unnecessary should not be faulted for such reliance. . . . [C]ourt[s] must consider doctrines such as this[,] which will facilitate the attempted resolution of disputes out of court and will not close the courts to parties who have failed in their good faith efforts to resolve such disputes.

Amodeo at 1239.

In addition to the contract, the Court presently has no reason to doubt that the repair-doctrine extends to Plaintiffs' warranty claims. InfoPrint, 817 F. Supp.2d at 633 (the repair doctrine addresses "breach of warranty [claims]"); *accord* Hrycay v. Monaco Coach Corp., 2008 WL 1869277, *3 (E.D. Pa. Apr. 28, 2008) ("even if the [l]imited [w]arranty

2

effectively reduced the statute of limitations, a question of fact exist[ed] as to whether the statute of limitations was tolled under Pennsylvania's repair doctrine"). Additionally, Defendant's legal analyses conflate the limitations-issue, as relates to the contract versus the warranty. *Cf.* Def. NVR's Br. (Doc. 18) at 6-9 (applying essentially the same analyses to warranty and contract claims). Although the parties' contract (absent tolling) may require the filing of suit within one year, it does not follow that the warranty claims likewise are so limited. The durational-limits in the warranty (one year, two years or ten years[2]) contemplate an *invocation of the warranty*, not a filing of suit. *See* Doc. 18-1 at pgs. 60-61 of 62 ("Procedure for Adjudicating [Warranty] Claims").[3]

In sum, Defendant NVR has not demonstrated that a dismissal of all contract and warranty claims is appropriate. Defendant Ply Gem's arguments regarding the warranty claims likewise are unpersuasive. Ply Gem posits that, in light of Plaintiffs' allegations regarding NVR's mishandling/improper installation of the windows, they cannot proceed under the Ply Gem warranty on the basis of non-conforming or defective windows. *See* Def. Ply Gem's Br. (Doc. 21) at 14. Plaintiffs' allegations in-the-alternative are obvious enough: they do not

---

[2] Defendant argues that − even if Plaintiffs contend that certain alleged deficiencies fall under the 2-year warranty categories (plumbing, HVAC, electrical and fire suppression), and thus are timely − the only claims that arguably may so-qualify already have been remedied. *See* Def. NVR's Br. (Doc. 18) at 8 n.5. Defendant's inquiry, however, demands too much of Plaintiffs in this notice-pleading Court. The Complaint does not, and indeed had no reason to, parse Plaintiffs' warranty claims into different categories/coverage-periods. To the extent that such analyses are warranted, they are appropriate on summary judgment, not at the 12(b)(6)-stage.

[3] Defendant's Motion does not challenge Plaintiffs' claims on the basis of non-compliance with the warranty. *See id.* (contemplating written notice and arbitration). The Court offers no opinion in this regard, other than to observe that Defendants' (alleged) course of dealing and conduct appear inconsistent with demands for strict compliance.

know which Defendant ultimately is responsible, but it must be one or the other. Ply Gem has identified nothing untoward or impermissible regarding this approach.

These rulings having been made, the Court declines to parse Plaintiffs' claims on a grievance-by-grievance basis. Plaintiffs initiated this removed-action in Pennsylvania state court, and the original tribunal applies/applied a different pleading standard (fact-pleading). Having carried that practice into federal court, Plaintiffs' pleadings are far more detailed than this tribunal, and its applicable laws, would require. Allowing the practice to cause a degeneration into endless digressions would be inconsistent with the Rules and laws of this Court, not to mention the interests of judicial economy. The Court, herein, has established the governing legal principles, and any dissection of the specifics will be reserved for summary judgment.[4] Defendants' arguments regarding the measure of available damages likewise are so-reserved. *Compare* Def. NVR's Br. (Doc. 18) at 9-12 *and* Def. Ply Gem's Br. (Doc. 21) at 13-16 (arguing for restrictions on damages) *with, e.g.*, Campenella Const. Co., Inc., v. Great Amer. Ins. Co., 2010 WL 2076089, *4 (E.D. Pa. May 21, 2010) ("[t]he [c]ourt need not specify on a motion to dismiss that any particular measure of damages is either improper or . . . proper," and "[t]his issue can be revisited in a motion for summary judgment or at trial").

Turning to Plaintiffs' tort claims, the Court agrees with Defendant NVR that such claims are barred under the gist-of-the-action test. The doctrine "precludes a party from raising tort claims where the essence of the [case] actually lies in a contract that governs the parties'

---

[4] Although the Court presently will not parse Plaintiffs' claims on a grievance-by-grievance basis, the litigants can, and certainly should, examine their strengths and weaknesses, for the purposes of case-valuation and establishing reasonable expectations. By way of example, Plaintiffs' self-help construction of a backyard retaining wall clearly would not qualify under the repair-doctrine. In order for this Court's mandatory-ADR to be useful, it is incumbent upon counsel to examine Plaintiffs' grievances, one-by-one, and assess the reasonable likelihood of success on each.

relationship." Abraham v. Greater New Castle Cmty. Fed'l Credit Union, 2016 WL 1161217, *2 (W.D. Pa. Mar. 23, 2016) (citation to quoted source omitted). Its applicability in this case could not be clearer. *See, e.g.*, Am. Compl. at ¶¶ 129-130 (referencing "various deficiencies" in connection with contract and/or warranty, and "breaches" of duty thereunder). Plaintiffs cannot escape this conclusion through their counsel's vague reference to "negligence *per se*" concepts. *Compare* Pls.' Opp'n Br. (Doc. 25) at 5 ("NVR . . . violated the building code, creating hazards and threats to public safety") *with* Rock v. Voshell, 397 F. Supp.2d 616, 628 (E.D. Pa. 2005) (gist-of-the-action test, and related economic loss doctrine, apply with equal force to negligence *per se* claims). Plaintiffs cannot properly expand the scope of recovery though bald incantations of tort law, and Defendant's Motion to Dismiss, in this regard, is well taken.

The same is true regarding Plaintiffs' claims under Pennsylvania's UTPCPL. First, Defendants are correct that Plaintiffs have failed to plausibly establish the element of justifiable reliance. Most of Defendants' purported misrepresentations have to do with promises made by them regarding potential remedies for Plaintiffs' various grievances. *See, e.g.*, Am. Compl. (Doc. 12) at ¶ 135 (alleging that Plaintiffs "reasonably relied" on inducements and representations regarding potential fixes). To the extent that Plaintiffs may enjoy relief in this context, it properly is accounted for through an application of the repair doctrine. *See* discussion *supra*. Otherwise, counsel's responses regarding justifiable reliance are pretzel-logic, turning back-in on the contract and warranty theories. *See* Pls.' Opp'n Br. (Doc. 25) at 5 ("any reasonable person would be justified in relying upon the protections afforded by [the] *warranty*") (emphasis added).

5

Second, Plaintiffs' UTPCPL claims fail under the same contract-versus-tort precepts referenced above. *See* Price v. Foremost Indus., Inc., 2018 WL 1993378, *5 (E.D. Pa. Apr. 26, 2018) ("[t]he economic loss doctrine (and its closely related cousin, the 'gist of the action' doctrine) bar[] claims under the UTPCPL") (relying on, among other cases, Werwinski v. Ford Motor Co., 286 F.3d 661 (3d Cir. 2002)). Given the exceedingly close-ties between Plaintiffs' putative tort- and contract-based theories, the Court has little reservation in concluding that the UTPCPL claims likewise fail.[5]

Given that Plaintiffs' statutory and tort claims will be dismissed, Defendant NVR is correct that Plaintiffs' claim for punitive damages likewise fails. *See generally* DiGregorio v. Keystone Health Plan East, 840 A.2d 361, 370 (Pa. Super. 2003) (punitive damages are unavailable for breach of contract). Finally, the Court rejects Defendant Ply Gem's request to strike exhibits from the Complaint. *See* Def. Ply Gem's Br. (Doc. 21) at 16-17. Motions to strike are disfavored, and they require a showing of clear prejudice. Three Rivers Hydroponics, LLC v. Florists Mut. Ins. Co., 2018 WL 791405, *2 (W.D. Pa. Feb. 8, 2018) (citations to quoted and other sources omitted). Defendant's arguments against the "pleading of evidence"

---

[5] The Court is cognizant of the disagreement in this Circuit regarding the continued vitality of Werwinski. *See, e.g.*, Durkey v. Pacific Life Ins. Co., 2017 WL 8941225, *6-8 (W.D. Pa. Aug. 4, 2017) (questioning whether, in light of a later-issued intermediary appellate state-court decision, the economic loss doctrine still applies to UTPCPL claims). Nevertheless, the Court of Appeals for the Third Circuit (albeit in an unpublished opinion) recently affirmed its continued application of Werwinski. *See* Berkery v. Verizon Commc'ns. Inc., 658 Fed. Appx. 172, 175 (3d Cir. 2016) (affirming district court's conclusion that UTPCPL claims were barred under the economic loss doctrine, per the "binding Third Circuit precedent" in Werwinski). The Court believes that the Circuit's rulings are best-indicators regarding the state of the law; particularly where, as here, the UTPCPL claims are plain and obvious restatements of contract-theories.

ring hollow, given the fact-pleading standards that − until-recently – applied. More importantly, there is no meaningful prejudice to Ply Gem.

Consistent with the foregoing, Defendants' Motions to Dismiss (**Docs. 17 & 20**) are **GRANTED IN PART** and **DENIED IN PART**, as described above.[6]

IT IS SO ORDERED.

June 18, 2018                                             s/Cathy Bissoon
                                                         Cathy Bissoon
                                                         United States District Judge

cc (via ECF email notification):

All Counsel Currently of Record

---

[6] It does not appear that any of the pleading-deficiencies identified herein properly may be cured by amendment; and the Court, therefore, so holds. Even were Plaintiffs to disagree, the Court is persuaded by Defendant Ply Gem's explanations regarding the extensive amendment efforts already undertaken, *see* Ply Gem's Br. (Doc 21) at 2, 4 & 7; and it would be unfair to Defendants, and the Court, to engage another round of amendments, along with the dispositive-motions that surely would follow. *See generally* Taylor v. Pilewski, 2008 WL 4861446, *3 (W.D. Pa. Nov. 7, 2008) ("[the c]ourt need not provide endless opportunities" for amendment, especially where such opportunity already has been enjoyed); Houser v. Postmaster Gen. of U.S., 573 F. App'x 141 (3d Cir. 2014) (affirming dismissal without leave to amend, based on court's finding that "[it] would be inequitable to require [the d]efendant, who already once ha[d] exhaustively and successfully defended [the p]laintiff's grievances, to respond to a continuous stream of formal and informal attempted amendments"). There has been delay-enough, and it is in everyone's best interest to move forward.